Mrs. Mary Ellen PRITCHARD, wife of Charles C. Pritchard, Plaintiff,

v.

Robert C. DOWNIE, Administrator of the Estate of Eugene G. Smith, Defendant.

No. 3768.

United States District Court
E. D. Arkansas, W. D.

Feb. 9, 1962.

———◆———

Amis Guthridge, Little Rock, Ark., Sidney W. Provensal, Jr., New Orleans, La., for plaintiff.

Joseph C. Kemp, Little Rock, Ark., for defendant.

YOUNG, District Judge.

The principal issue involved in this decision is whether Rule 25(a) (1) [1] of the Federal Rules of Civil Procedure, 28 U.S.C.A., prevails over §§ 62–2601 and 62–2602 of the Arkansas Statutes, and allows the plaintiff to maintain this cause of action against the original defendant's estate after the time period allowed by Arkansas law for revival against his estate has lapsed.

This is an action for damages to plaintiff brought pursuant to 42 U.S.C.A. § 1983 for alleged violations of her civil rights. Plaintiff, in her complaint filed September 25, 1959, alleges that she was arrested on August 12, 1959 when the Little Rock City Police dispersed a mob at the intersection of Fourteenth and Schiller Streets in Little Rock, Arkansas. Mrs. Pritchard brings this action against Robert C. Downie, Administrator of the Estate of Eugene G. Smith, for alleged due process violations incident to this arrest; she asserts that she was denied her constitutional rights to equal protection under the laws, to see and talk to her attorney, was illegally detained for an unreasonable length of time, was subjected to constant questioning, denied opportunity to post bail immediately upon her request, and subjected to beatings and rough treatment. Mrs. Pritchard seeks damages for physical injuries, embarrassment, humiliation, and grief to herself and her family.

Eugene G. Smith, Little Rock Police Chief, died on the 18th day of March, 1960. On the 6th day of September defendant's attorney filed the suggestion of his death.

On September 27, 1960 this court dismissed the action on the theory that while the Arkansas law would have permitted revival of the action, federal law would not, and the latter was controlling. Lauderdale v. Smith, 8 Cir., 186 F.Supp. 958 (a companion case to Pritchard). The Eighth Circuit Court of Appeals reversed, holding that the court should look to the Arkansas law to determine the survival issue. Pritchard v. Smith, 8 Cir., 289 F.2d 153. As a result of that

[1]. Rule 25(a) (1) "If a party dies and the claim is not thereby extinguished, the court within 2 years after the death may order substitution of the proper parties * * *."

decision, on April 26, 1961, the Court of Appeals issued its mandate ordering the cause to be reinstituted and the administrator to be substituted as defendant. An order in accordance with the mandate was issued by this court.

After the order of revival and substitution of the administrator as defendant, the defendant filed this motion to dismiss for failure to comply with the Arkansas statutes of non-claim.

The Arkansas statutes relating to claims against estates relating to any action pending against any person at the time of his death which survives against the personal representative may be summarized as follows: within six months from the date of the first publication of notice to creditors, plaintiff in such action shall file with the probate court in which the estate is being administered a copy of the petition for revivor or of the complaint, or a statement signed by the plaintiff or his attorney setting forth a description of the nature of the action, the claim or demand therein involved, the parties to the action, and the court in which the action is pending. Ark.Stats. §§ 62–2601, 62–2602 (1949).

Here the first notice to creditors was published on April 2, 1960. The six months' period expired not later than October 2, 1960, five days after dismissal by the district court and prior to appeal by plaintiff of the court's decision. It is undisputed that plaintiff did not comply with the Arkansas statutes in regard to filing the requisite notice with the Probate Court of Pulaski County within the time specified, nor, as far as the record discloses, has ever done so.

There is no doubt in my mind that, if applicable, the Arkansas non-claim statutes bar this claim, and defendant's motion to dismiss should be granted. Turner v. Meek, 225 Ark. 754, 284 S.W.2d 848 (1955).

The plaintiff contends:

(a) that these Arkansas statutes would not require dismissal of the action, and

(b) even if so, Rule 25(a) (1), F.R. Civ.P. applies to the exclusion of the Arkansas non-claim statutes.

I have already stated that if Arkansas law is applicable this action should be dismissed. The problem remaining then is this: Which law, state or federal, governs the period of time allowed for the revival of an action against the deceased's administrator in an action based on a federal right?

To answer this question it is necessary to consider the validity and applicability of Rule 25(a) (1). When Congress passed the Enabling Act authorizing the Supreme Court to promulgate the Federal Rules, 28 U.S.C.A. (§ 2072), it commanded that "Said rules shall neither abridge, enlarge, nor modify the substantive rights of any litigant * * *". Thus, does Rule 25(a) (1) abridge, enlarge, or modify the substantive rights of the litigants in this case?

This Rule has been challenged in several cases and the authorities are in disagreement as to its validity.[2] Rule 25(a) (1) was based upon § 778 of the Judicial Code, Hearings Before the House Committee on the Judiciary, 75th Cong., 3rd Sess., ser. 17, at 115 (1938), which placed a two-year limitation on revival actions. Anderson v. Yungkau, 329 U.S. 482, 67 S.Ct. 428, 91 L.Ed. 436 (1947) used § 778 to support Rule 25(a) (1). The Court in the Yungkau case said: "Thus * * * Rule 25(a) operates both as a statute of limitations upon revivor and as a mandate to the court to dismiss an action not revived within the two year period." Under Anderson v. Yungkau the question would appear a simple one, and the two-year limitation of the rule would control the determination of this

---

**2.** Rule 25 has been called "the poorest rule of all the Federal Rules." 4 Moore's Federal Practice § 25.01 (2d Ed. 1950); it has been said that it deals with a subject matter which is in a "twilight zone * * * where a rational classification could be made either way * * *." Iovino v. Waterson, 2 Cir., 274 F.2d 41 (1959), citing Sampson v. Channell, 110 F.2d 754, 128 A.L.R. 394 (1st Cir. 1940).

question, thus allowing the plaintiff to remain in court. However, § 778 was repealed after the Yungkau decision (1948). Since the repeal of § 778 some doubt has arisen regarding the Yungkau construction of Rule 25(a). Professor Moore maintains that the Court in that decision was supported by § 778; it was therefore "unnecessary to distinguish between the command of the Rule and the command of the statute." 4 Moore's Federal Practice § 25.06 (2d ed. 1950). Therefore, when § 778 was repealed the rule was forced to stand on its own merit, and could not be braced by a federal substantive statute of limitations or revivor; Professor Moore then reasons that the rule regarding limitations is substantive (citing Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949)), and that the rule violated the Enabling Act caveat; thus the rule would be invalid, and no applicable federal statute of limitations would exist.

When such a situation arises the state statute of limitations normally applies. McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958); Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946). And, as I have said, under the applicable Arkansas statutes (Ark.Stats. Ann. §§ 62–2601, 62–2602), see Turner v. Meek, supra, the plaintiff would be out of court.

Professor Moore has not been unsuccessful in gaining converts to this theory. The Fifth Circuit adopted this view in Perry v. Allen, 5 Cir., 239 F.2d 107 (1956). Judge Cameron felt that a valid statute must be the act of a legislative body, and that the placing of a mandatory limitation upon the "asser-

tion of a right goes to the substance of the right even though such an Act is catalogued as relating to remedy alone." The Court reasoned that this limitation must be supported by a statute passed by the legislature and is "beyond the competence of a court exercising its power to formulate rules of procedure." Judge Cameron then went on to say:

> "Under these tests, we hold that Rule 25(a)(1) is not a Statute of Limitations and is invalid insofar as it attempts to abridge appellant's substantive right to bring his civil action to trial on its merits, by placing a categorical and inflexible time limit upon his right to substitute the collector's administrator. Such an attempt is outside the mandate and inside the caveat of the Act of Congress."[3]

The opinions of the Second Circuit Court of Appeals are to the contrary. In Bush v. Remington Rand, Inc., 213 F.2d 456 (2nd Cir. 1954), certiorari denied in 348 U.S. 861, 75 S.Ct. 85, 99 L.Ed. 679 (1954), the Court did not question the validity of Rule 25(a).[4]

In Iovino v. Waterson, 274 F.2d 41 (2nd Cir. 1959), the Second Circuit again had occasion to consider the validity of Rule 25(a)(1) of the Federal Rules of Civil Procedure; at this opportunity the Court specifically upheld the validity of the rule. Judge Friendly, in this diversity case, determined that revivor was procedural, and since Congress had authorized the Supreme Court to promulgate procedural rules for the federal courts,[5] Rule 25(a) was valid. The Court reasoned that:

> "We are dealing with a subject-matter which, though 'outcome de-

---

3. The Act of Congress which Judge Cameron speaks of is probably the Enabling Act. Here Judge Cameron also cited Baltimore & Ohio Railroad Co. v. Joy, 173 U.S. 226, 19 S.Ct. 387, 43 L.Ed. 677 (1899), for the proposition that the right to revive depends primarily upon State law when there is no applicable federal statute.

4. The Court held that the defendant waived his right to object to the substitution because of his great delay in moving to dismiss; therefore by the doctrine of waiver and a distinguishing of Anderson v. Yungkau, supra, the Court was able to achieve what it considered to be an equitable result without invalidating Rule 25(a)(1).

5. The Enabling Act, 28 U.S.C. § 2072.

terminative' has long been regarded as procedural by lawyers, by legislators and by the Supreme Court itself, Baltimore & Ohio R. Co. v. Joy, supra. We believe revivor falls in what Judge Magruder called, although, to be sure, before Guaranty Trust Co. of New York v. York [326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079], 'a twilight zone  *  *  * where a rational classification could be made either way, and where Congress directly, or the Supreme Court under the authority of the Act of June 19, 1934, 48 Stat. 1064, 28 U.S.C.A. §§ 723b, 723c, would have power to prescribe a so-called rule of procedure for the federal courts.' Sampson v. Channell, 1 Cir., 110 F.2d 754, 756–757, 128 A.L.R. 394, certiorari denied 1940, 310 U.S. 650, 60 S.Ct. 1099, 84 L.Ed. 1415."

See also Starnes v. Pennsylvania Railroad Company, 26 F.R.D. 625 (E.D.N.Y., 1961), which held Rule 25(a) (1) valid, and dismissed the case pursuant thereto.

Apparently the cases upholding the validity of Rule 25(a) (1) have determined that the rule is procedural, thus governing even though contrary to state law.

It appears, then, that this Court is confronted with a problem which has received divergent answers from the two circuits which have had occasion to deal with it.

The outcome of this motion depends, to a large extent, upon a determination of whether Rule 25(a) (1) is procedural, or whether it violates substantive rights. It is not without considerable doubt that I have arrived at my decision in this case, that Rule 25(a) (1) of the Federal Rules of Civil Procedure is procedural and valid and therefore should be applied to the case at hand.

█ When a federal law is passed under the authority of the Constitution of the United States it is supreme, and state laws which are in conflict with it must yield to such a law. U.S.Const. art. VI, cl. 2; Morris v. Jones, 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488 (1946). In the case now before us the Arkansas Legislature has passed legislation limiting the time for a revival of an action against the deceased's administrator; the Federal Rules of Civil Procedure promulgated under the authority of the Enabling Act have also placed a time limit on the revival of an action; these time limits are in conflict, and it must be the federal rule that prevails if such rule is, as I believe it is, valid.

It should be borne in mind that this action is not one founded on diversity of citizenship, but is one arising out of a federal right. This Court is not under the same obligation to seek uniformity with the law of Arkansas in a nondiversity case as it would be in a case where jurisdiction is founded upon diversity. Cf. Levinson v. Deupree, 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319 (1953). I think that Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), limited itself to diversity cases when laying out the so called "outcome determinative" test [6] to determine whether a rule is procedural or violates substantive rights of the litigants. Substitution has long been characterized as procedural, Iovino v. Waterson, supra; Jones v. Schellenberger, 196 F.2d 852 (7th Cir. 1952), cert. denied La Reau v. Jones, 344 U.S. 876, 73 S.Ct. 171, 97 L.Ed. 679 (1952); Commercial Solvents Corporation v. Jasspon, 92 F.Supp. 20 (S.D.N.Y.1950); 45 Va.L.Rev. 75 (1959). It has been since the "outcome determinative" test that rules which have been historically regarded as procedural—such as a statute of limitations—have been characterized as substantive. It is significant to note that Ragon v. Merchants Transfer & Warehouse Co., supra—the case Professor Moore relies on in his

**6.** Since the Guaranty Trust Co. case the standard used in determining whether a rule is substantive or procedural has been that when a failure to apply the state rule would cause a substantially different result to the litigation, said rule must be characterized as substantive.

contention that the limitations provision of Rule 25(a) is substantive—is a diversity action, and that the United States Supreme Court relied on the Guaranty Trust Co. test for determining whether a rule is procedural or substantive; in fact, the Court distinguished Bomar v. Keyes, ante on the ground that it was not a diversity case. As was said above, the Guaranty Trust Co. case limited itself to diversity actions.[7]

It would seem as important to achieve unity among the federal courts in cases arising out of federally-created rights as it is to retain unanimity in construction of state-created rights in diversity cases. The Guaranty Trust theory that a federal district court is just another state court when jurisdiction is based on diversity cannot be extended to nondiversity cases. It has been said that in a nondiversity case the federal district court is a federal court which must maintain a uniform nationwide treatment for federally-created rights. See excellent note in 45 Va.L.Rev. 75 (1959) at pages 93 and 94.

It is my opinion that in the area we are discussing the "outcome determinative" rule is limited to diversity cases.

The applicable test in a nondiversity action should be the criterion set out in Sibbach v. Wilson & Co., 312 U.S. 1, 61 S.Ct. 422, 89 L.Ed. 479 (1941): "The test must be whether a rule really regulates procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them."

Rule 25(a)(1) is merely a formula used to facilitate the closing of a deceased's estate within a reasonable time.[8] Surely this is a rule of procedure. See 2 Barron & Holtzoff Federal Practice and Procedure § 621 at page 416 where the author says: "The rule is intended to be procedural. It does not provide for the survival of rights or liabilities but merely provides the method by which the original action may proceed if the right of action survives." Rule 25(a)(1) must govern in a nondiversity case. See 45 Va.L.Rev. 75.

The Court has carefully considered Zuckerman v. McCulley, 170 F.2d 1015 (8th Cir. 1948), which the defendant argues is controlling. This case involved a suit in Missouri against an administrator. The Missouri statute required demands against estates to be legally exhibited within one year from the granting of letters of administration. Also, in Missouri, actions commenced against an executor or administrator are considered demands legally exhibited from the time of serving of process. Process was not served in this case until after the year had expired. It was a diversity action. The Eighth Circuit said:

"It is settled law that a non-resident, seeking in a federal court to establish a claim against the estate of a decedent, is in no better or different position than a local creditor attempting to establish such a claim in the courts of the State. The federal court is required to give full effect to the applicable State law relative to the settlement of such estates. * * *

"The case of Bomar v. Keyes, 2 Cir., 162 F.2d 136, 140, 141, upon which the plaintiff relies, held that, under Rule 3 of the Federal Rules of Civil Procedure, the filing of the complaint tolls the state statute of limitations applicable to a federal court action for damages under the Federal Civil Rights Act, 8 U.S.C.A.

---

7. Even in diversity cases the "outcome determinative" test has lost some of its significance; in Byrd v. Blue Ridge Elec. Co-Op., 356 U.S. 525, 78 S.Ct. 893, 2 L. Ed.2d 953 (1958), the Supreme Court held that the "outcome" test may not necessarily be followed when the issue involves a strong federal policy.

8. It is of interest to note that most of the criticism of Rule 25(a)(1) arises from the fact that the litigant's right to have his cause tried on the merits is denied. In this case a holding invalidating Rule 25(a)(1) would operate to foreclose the plaintiff such a trial on the merits.

§ 43, although the state statute fixes the beginning of an action at the date when process is served or is put in the sheriff's hands for service. * * *

"It is our opinion that state statutes fixing the time and manner for the exhibition of demands against estates of deceased persons and providing that claims not so presented shall be barred, are not purely procedural, but are laws limiting the rights of parties (Security Trust Co. v. Black River National Bank, supra, page 231 of 187 U.S. page 59 of 23 S.Ct.), and are not affected or amended by Rule 3 of the Federal Rules of Civil Procedure. The plaintiff here, brought this action in time, but failed to legally exhibit her claim before it was barred by the statutes of Missouri."

■ The case here is distinguishable from Zuckerman. The latter was a diversity case and involved a statute of limitations concerning the commencement of a cause of action created by the state. The case now before the Court is not a diversity case and there is no contention that the action was not commenced within the proper time period. There is no question here regarding the commencement of an action; our problem involves a substitution of parties after a party dies and the claim is not extinguished in law. Unlike Rule 3 (with which Zuckerman was concerned), Rule 25(a) (1) specifically sets a time limit for such a substitution, and I feel constrained to hold that the rule must be followed here even though in conflict with Arkansas statutes.

The defendant's characterization of the problem is interesting; he contends that the Statute of Non-Claims and Revivor are rules of property and not procedure. Citing Security Trust Co. v. Black River National Bank, 187 U.S. 211, 23 S.Ct. 52, 47 L.Ed. 147 (1902). This theory is an appealing one; the ability of a state to control its probate administration is seriously weakened by Rule 25(a) (1). The defendant's contention seems even more plausible when one considers that all the cases cited in this opinion upholding the rule as being procedural and valid are concerned with a situation which would shorten the winding up of the estate, while an application of Rule 25(a) (1) to our facts could add eighteen months to the estate's administration. The disruptive effect that this elongation will have on a state's probate law procedure is not difficult to fathom.[9]

But much occurred after the Black River case. Since 1902 the Federal Rules of Civil Procedure have been promulgated; the Erie doctrine has forced the federal courts to distinguish between diversity and non-diversity cases; and precedents have been handed down which have upheld Rule 25(a) (1) of the Federal Rules of Civil Procedure, Anderson v. Yungkau, supra; Iovano v. Waterson, supra.

The Black River case was an action based on diversity. There the United States Supreme Court decided that there was no jurisdiction to decide whether an alleged debt against the estate was valid when the estate had been closed and the final accounting had been completed. Rule 25(a) (1) bears directly on the problem at hand; when Black River was decided there were no federal rules to guide the courts. To hold that the state rule prevails over the federal rule I would have to declare that Rule 25(a) (1) was void, and this I am unwilling to do.

Rule 25 may be the worst of the federal rules, but it is the opinion of this

9. It is true that Anderson v. Yungkau, supra, held that under Rule 25(a) substitution within the two-year period is not a matter of right; the Court "may" order substitution but it is under no duty to do so. The basis for the discretion of the Court was stated to be that the settlement and distribution of the estate might be so far advanced as to warrant a denial of the motion for substitution within the two-year period. However, the facts in this case would not justify the Court in denying substitution for that reason.

Court that it must be followed when applicable, and it is applicable in this non-diversity case which deals with a federally created right.

The defendant's motion to dismiss will be denied.

There are eight pending cases, including this one, involving the same problem. I am of the opinion that the order denying defendant's motion to dismiss involves a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal from the order may materially advance the ultimate termination of the litigation in this as well as the companion cases. This finding is made so that defendant may, if he is so advised, apply to the Circuit Court of Appeals for permission to appeal from such order under 28 U.S.C.A. § 1292(b).