Dewana G. TURNER, Bonita H. Hixson, and Yolanda P. Monroe, on behalf of themselves and all others similarly situated, Petitioners,

v.

ALASKA COMMUNICATIONS SYSTEMS LONG DISTANCE, INC., and Alaska Communications Systems Group, Inc., Respondents.

No. S–10692.

Supreme Court of Alaska.

Oct. 10, 2003.

Peter J. Maassen, Ingaldson Maassen, P.C., Anchorage, and Paul Adelman, Law Office of Paul Adelman, Anchorage, for Petitioners.

Susan Orlansky, Jeffrey M. Feldman, and Ruth Botstein, Feldman & Orlansky, Anchorage, for Respondents.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Petitioners, representing a class suing Alaska Communications Systems Long Distance, Inc. and Alaska Communications Systems Group, Inc. for terminating a widely

advertised calling plan, contest a class notification that suggests that the court may hold absent class members liable for defendants' attorney's fees if the class suffers an adverse judgment. We conclude that holding these absent class members liable for attorney's fees upon an adverse judgment will chill class participation and hamper the efficiencies of class litigation. We therefore reverse the order of the superior court approving the disputed language in the class notice.

## II. FACTS AND PROCEEDINGS

### A. Factual History

In October 2000 Alaska Communications Systems Long Distance, Inc. and Alaska Communications Systems Group, Inc. (collectively ACS) offered and marketed a long distance calling plan that provided unlimited long distance service for a twenty-dollar monthly fee. After the plan attracted thousands of customers, ACS canceled the calling plan in May 2001, citing unexpected high costs, unforeseen regulation requirements, and customer abuses of the plan. ACS did continue to provide a twenty-dollar monthly long distance plan, but that plan was limited to 600 monthly minutes.

### B. Procedural History

Dewana G. Turner, Bonita H. Hixson, and Yolanda P. Monroe (collectively Turner), three former subscribers, sued on behalf of the approximately 30,000 subscribers to the plan, claiming, among other things, that ACS's unilateral elimination of the most material element of the long distance contract was a breach, that ACS violated the Alaska Unfair Trade Practices and Consumer Protection Act by making misleading statements about the plan, and that ACS fraudulently concealed material facts, including the company's inability to maintain the plan for anything longer than a promotional period. The superior court certified the class as an Alaska Civil Rule 23(b)(3) class, requiring notice to potential class members and an opportunity for class opt-outs. The class's counsel indicated that the award of damages for each individual class member would range from zero to a thousand dollars.

The parties disagreed on the wording of the class notification. Turner wanted the notification to affirmatively state that absent class members may not be held liable for attorney's fees: "[A]s an absent class member, you cannot be held liable for any attorneys' fees or costs that the Court may award ACS, if ACS prevails." ACS wanted the class notification to indicate that class members who did not opt out might be held liable for attorney's fees in the case of an adverse judgment. Recognizing that the question whether unsuccessful absent class members could be exposed to Rule 82 fees raised "a difficult issue," and that the answer was "uncertain," the superior court decided to "err on the side of revelation" and warn class members of their possible liability for attorney's fees. It therefore crafted the following notice:

> In Alaska, the losing side in a lawsuit is generally required to pay a portion of the winning side's costs and attorney's fees. Whether this rule applies to all members of a class action is uncertain. The plaintiff class appears to have roughly 30,000 members. If the class loses on the claims it has brought against ACS, and if the class is required to pay a portion of ACS's costs and attorney's fees, then the money owed would be spread out amongst the entire class. Thus, if you choose to remain a member of the class there is a possibility that you will be required, if the class loses, to pay some of ACS's costs and attorney's fees incurred in opposing this litigation.

Believing that the class notice misstated the law, Turner petitioned this court for review of the legal permissibility of imposing defendants' attorney's fees on absent class members, and we granted the petition. After oral argument, we issued an order requiring the superior court to redraft the notice. This opinion now follows.

## III. STANDARD OF REVIEW

The parties disagree about the appropriate standard of review. ACS argues that we should apply the abuse of discretion standard, which we have applied for other certification issues and which federal courts have applied in class notification cases. But Tur-

ner correctly points out that the underlying question whether a court may assess defendants' attorney's fees against absent class members is one of law.[1] Legal issues are reviewed de novo, and we adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[2]

## IV. DISCUSSION

It is well established that absent members of a class generally are not held liable for attorney's fees: "An absent class member is not personally liable for litigation expenses or attorney's fees except insofar as there is a common fund recovery for the class."[3] The United States Supreme Court's discussion in *Phillips Petroleum Co. v. Shutts* explains the purpose of this rule.[4] The *Shutts* Court addressed whether the state of Kansas could, without violating the Due Process Clause, assert personal jurisdiction over members of a class who did not affirmatively opt into but did not opt out of a class seeking a money judgment.[5] In ruling that a Kansas court could assert personal jurisdiction over absent class members who had limited contacts with the forum state, the Court reasoned that "[u]nlike a defendant in a normal civil suit, an absent class-action plaintiff is not required to do anything" and "an adverse judgment typically [will not] bind an absent plaintiff for any damages, although a valid adverse judg-

ment may extinguish any of the plaintiff's claims which were litigated."[6] Therefore, "the Due Process Clause need not and does not afford [absent class plaintiffs] as much protection from state-court jurisdiction as it does [absent defendants in nonclass suits]."[7] While the *Shutts* decision deals with damages,[8] and this case deals with attorney's fees, the relevant point is that absent class members generally cannot be held liable for monetary awards.[9]

Thus, absent class members "are not liable for costs, though they may be otherwise bound by the judgment, whether favorable or unfavorable."[10] An exception applies to this general rule. "When ... the class action successfully recovers a fund for the benefit of a class or when nonparties to the suit will share in those monies, it is long settled," as one treatise explains, "based largely on windfall and unjust enrichment principles, that the attorneys who created the class recovery are entitled to be reimbursed from the common fund for their reasonable litigation expenses, including reasonable attorneys' fees."[11]

In *Municipality of Anchorage v. Gentile,* a case in which class representatives successfully protected the retirement benefits of retired Anchorage police officers and fire-

1. *Earley v. Superior Court,* 79 Cal.App.4th 1420, 95 Cal.Rptr.2d 57, 60 (2000) ("The extent to which absent class members should be exposed to personal liability for a successful defendant's attorney's fees and costs is a matter dependent upon questions of public policy as well as statutory interpretation. These are questions of law subject to our independent review.").

2. *Bennett v. Bennett,* 6 P.3d 724, 726 (Alaska 2000).

3. 1 HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 1.03, at 1–12 (3d ed.1992).

4. 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *see also Bartek v. State, Dep't of Natural Res., Div. of Forestry,* 31 P.3d 100, 102 (Alaska 2001) (noting that federal decisions are particularly persuasive in interpreting Alaska Civil Rule 23 because that rule is patterned after Federal Civil Rule 23).

5. *Phillips Petroleum,* 472 U.S. at 811, 105 S.Ct. 2965.

6. *Id.* at 810, 105 S.Ct. 2965.

7. *Id.* at 811, 105 S.Ct. 2965.

8. In a footnote, the *Shutts* Court explicitly declined to make a ruling on the imposition of court costs on absent class members, but did make this observation: "Petitioner places emphasis on the fact that absent class members might be subject to discovery, counterclaims, cross-claims, or court costs. Petitioner cites no cases involving any such imposition upon plaintiffs, however. We are convinced that such burdens are rarely imposed upon plaintiff class members, and that the disposition of these issues is best left to a case which presents them in a more concrete way." *Id.* at 810 n. 2, 105 S.Ct. 2965.

9. *Id.* at 811–12, 105 S.Ct. 2965.

10. 3 HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 16.13, at 16–78 (3d ed.1992).

11. *Id.* § 14.02, at 14–3.

fighters, we addressed the issue of imposing attorney's fees on absent class members.[12] Specifically, we answered the question whether a trial court could impose attorney's fees on absent class members when a class common fund consists of benefits protected, rather than created, by class attorneys.[13] In holding that "a trial court could conclude that class members should be required to pay something for the benefit they have received as a result of the attorneys' efforts,"[14] we noted that named class parties "and their counsel ... are not entitled to charge absent class members for reimbursement of attorneys' fees or litigation expenses if the class suit is unsuccessful."[15] However, "[w]hen litigation bestows a benefit upon a class, the propriety of spreading the litigation costs among those benefited is well established."[16]

ACS argues that the treatises and court decisions relied on by Turner address only the question whether it is permissible to assess the class's own attorney's fees on absent class members. In contrast, ACS contends, the issue at hand deals with whether attorney's fees assessed in the case of an adverse judgment may be imposed on absent class members pursuant to Rule 82. ACS argues that Rule 82 is unique to Alaska, making other authority simply inapposite. While the issue of imposing Rule 82 attorney's fees on absent class members is an issue of first impression,[17] we are not convinced that Rule 82's uniqueness requires us to impose attorney's fees on absent class members in the event of an adverse judgment.

In *Adams v. Pipeliners Union 798*,[18] we suggested that courts may not assess attorney's fees against absent class members in the event of an adverse judgment. In that case, a union that supplied workers for the Trans–Alaska Pipeline racially discriminated against black workers in violation of Alaska law.[19] The Alaska State Commission for Human Rights "imposed a quota requiring the Union in filling any job order in Alaska to allocate 2.2% of its dispatches to blacks."[20] The 2.2% figure matched the percentage of Alaska's black population at the time.[21] Adams appealed the commission's remedy, pointing out that the union had recruited more than half its dispatched Alaska workers from the South, where the black population represented 38% of the population.[22] In ruling that Adams had standing to appeal the commission's limited remedy, we stated: "[N]o class member stands to lose anything if Adams's appeal is unsuccessful on the merits. There still will be a hiring quota imposed on Local 798. Moreover, Adams will not be able to assess class members with a portion of his attorney's fees if he loses on the merits."[23] ACS argues that *Adams* is not controlling because "the fee liability question addressed by the court was about Adams's own attorney's fees, not prevailing party fees." ACS, however, ignores that in *Adams* we partially based our conclusion that standing existed on the fact that no class member stood to lose anything. If the imposition of attorney's fees on class members had been allowed, then class members would have stood to lose something in *Adams*. Consequently, *Adams* does suggest that attorney's fees would not

---

**12.** 922 P.2d 248 (Alaska 1996).

**13.** *Id.* at 267.

**14.** *Id.*

**15.** *Id.* (quoting 3 HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 14.02, at 14–2 through 14–3 (3d ed.1992)).

**16.** *Id.*

**17.** In deciding that "absent class members, at least those identified on an 'opt-out' basis, cannot be held liable for a successful defendant's attorney's fees or costs," a California court of appeals noted that "[i]n reaching this result, we have not

been aided by any direct authority; indeed, this appears to be a very novel issue." *Earley v. Superior Court,* 79 Cal.App.4th 1420, 95 Cal. Rptr.2d 57, 64 (2000).

**18.** 699 P.2d 343 (Alaska 1985).

**19.** *Id.* at 345.

**20.** *Id.* (internal quotation omitted).

**21.** *Id.*

**22.** *Id.*

**23.** *Id.* at 349.

be imposed on absent class members in the event of an adverse judgment.

Civil Rule 82(a) provides that "the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule." Thus, the application of Rule 82 depends on whether absent class members are parties at all for Rule 82 purposes.

The United States Supreme Court has recently held that whether unnamed class members are parties depends on the procedural context in question. In *Devlin v. Scardelletti*, a class of retired pension plan recipients attempted to prevent the trustees of the plan from eliminating a cost of living adjustment for retired recipients.[24] One absent class member, after objecting to a settlement between the class and the adverse parties, attempted to appeal the trial court's approval of the settlement.[25] The circuit court held that the absent class member was not a party and could not appeal the trial court's ruling.[26] In overturning the circuit court, the Supreme Court held that "[n]onnamed class members ... may be parties for some purposes and not for others."[27] The Court continued that "[t]he label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context."[28] In determining that the absent class member was a party in the context of appealing from an objection to a class settlement offer, the Supreme Court reasoned that "[t]o hold otherwise would deprive nonnamed class members of the power to preserve their own interests in a settlement that will ultimately bind them...."[29] In following *Devlin's* rationale, we look to the procedural context of Rule 82 attorney's fees and assess the impact of holding that absent class members are parties liable for non-class attorney's fees.

In this case, each class member only stands to recover damages ranging from zero to a thousand dollars. Holding absent class members who stand to gain such small monetary awards liable for ACS's fees defeats a key role of the class action. In *Deposit Guaranty National Bank v. Roper*, the United States Supreme Court noted that the aggregation of small individual claims is an important use of the class action device, since without it, "aggrieved persons may be without any effective redress...."[30] A rule that permits the imposition of attorney's fees on absent class members who stand to gain such small monetary compensation will encourage opt-outs and have a chilling effect on this important use of the class action device. As a result, some class members with legitimate claims will be left without a remedy.

Moreover, such a rule might increase litigation. Although ACS contends that "a rational potential plaintiff ... would not opt out of the class and file a separate lawsuit, because such a litigant then would assume the responsibility for paying the *entire* Rule 82 award in the second lawsuit," this might not be the case. ACS's argument ignores the fact that potential class members who face imposition of attorney's fees in the case of an adverse verdict may have an incentive to opt out of the initial litigation in order to observe what happens in that litigation, maintaining an option to file a second lawsuit if the first one is successful. This would defeat a key purpose of the class action—the consolidation of like claims into one litigation.[31]

ACS contends that public policy favors the imposition of defendants' attorney's fees on absent class members, but ACS's arguments are unpersuasive. ACS argues that Rule 82 is supposed to "encourage litigants to factor in the costs of litigation when they decide whether to file lawsuits and whether and

24. 536 U.S. 1, 4, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002).

25. *Id.* at 4–6, 122 S.Ct. 2005.

26. *Id.* at 6, 122 S.Ct. 2005.

27. *Id.* at 9–10, 122 S.Ct. 2005.

28. *Id.* at 10, 122 S.Ct. 2005.

29. *Id.*

30. 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).

31. *See Earley v. Superior Court,* 79 Cal.App.4th 1420, 95 Cal.Rptr.2d 57, 66–67 (2000).

when to settle them," and contends that failing to impose attorney's fees will improperly affect absent class member behavior. ACS fails to recognize that absent class members do not file lawsuits[32] nor do they normally settle them.[33]

As ACS points out, Rule 82, which deviates from the American rule, is designed to create "basic fairness." "One who has been forced to litigate in order to vindicate one's rights should be reimbursed in part for litigation expenses."[34] ACS also notes that Rule 82 is a two-way fee-shifting statute mandating the awarding of attorney's fees to the prevailing party whether that be defendant or plaintiff, whereas many cause of action-specific fee-shifting statutes are one-way, only providing attorney's fees for plaintiffs. But our ruling does not eliminate Rule 82 attorney's fees in class actions; it simply limits Rule 82's possible reach to named parties, meaning that a person who has been forced to litigate in order to secure his or her rights will be reimbursed in part for litigation expenses.

Furthermore, we are guided by other courts' decisions regarding whether fee-shifting statutes require the imposition of attorney's fees on absent class members in the event of an adverse judgment. In *Earley v. Superior Court*, for example, a California court of appeals held that "absent class members, at least those identified on an 'opt-out' basis, cannot be held liable for a successful defendant's attorney's fees or costs."[35] The *Earley* court, considering an employee class action case for unpaid overtime wages, rea-

soned that imposing attorney's fees liability on absent class members would encourage class members to opt out and engage in separate litigation.[36] The court in *Earley* recognized that because the individual claims for unpaid wages were relatively small, "[d]efense fees and costs could easily dwarf the potential overtime compensation recovery each worker might obtain."[37] Consequently, "workers may well forego asserting their statutory wage and hour rights," thereby emboldening employers who violate the overtime laws.[38] Similarly, in this case, individual class members have relatively small claims. The threat of liability for attorney's fees might lead them to conclude that "the game is not worth the candle"[39] and cause them to forgo their legal remedies, thereby encouraging allegedly harmful business practices.

Moreover, while some class members will forgo their legal remedies, others might opt out and file separate claims. The *Earley* court noted that "[i]f an individual wage claimant is going to be held liable for defense fees, it makes much more economic sense to be liable only for the defense of an individual action rather than for the defense of a class action."[40] Imposing attorney's fees on absent class members after an adverse judgment would "foster repetitious litigation of essentially identical claims by individuals whose claims could otherwise be resolved in one class action."[41] And that "would undermine the effectiveness of the group remedy

---

**32.** Absent class members "are absent, unnamed parties who did not initiate the action...." 1 HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 1.03, at 1–11 (3d ed.1992).

**33.** While it is possible for an absent class member to opt out of a class and settle individually with defendant, such scenarios are unlikely because "[a]fter a class is certified, a defendant's settlement with any individual plaintiff, or even the sole named plaintiff, will ordinarily not diminish the exposure to liability of the defendant to claims from the rest of the class." 2 HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.14, at 11–18 through 11–19 (3d ed.1992). It should be noted that any absent class member may object to a settlement. *Id.* § 11.55, at 11–132. However, we need not address the issue of whether absent members who become active at

some point during the litigation are liable for attorney's fees.

**34.** *Bozarth v. Atlantic Richfield Oil Co.*, 833 P.2d 2, 4 n. 3 (Alaska 1992).

**35.** 95 Cal.Rptr.2d at 64.

**36.** *Id.* at 58, 67.

**37.** *Id.* at 67.

**38.** *Id.*

**39.** *Id.* at 65.

**40.** *Id.* at 67.

**41.** *Id.*

provided by the class action." [42]

Similarly, in *Wright v. Schock*, a case involving certain banks' practices in purchasing secured promissory notes, the Ninth Circuit addressed this issue.[43] The trial court in *Wright* granted summary judgment and awarded costs to defendants prior to ruling on class certification.[44] The plaintiff argued that the court should not have granted summary judgment before ruling on class certification because that prevented the plaintiff from spreading the judgment of defendants' costs across the class.[45] In rejecting this argument, the court recognized that granting summary judgment before certifying the class would not harm the plaintiff because "[a]bsent class members have no obligation to pay attorneys' fees and litigation costs, except when they elect to accept the benefit of the litigation." [46]

## V. CONCLUSION

Holding class members who have relatively small claims and who remain passive throughout litigation liable for nonclass attorney's fees will increase litigation and hamper the efficiencies of class litigation. Consequently, we hereby REVERSE the order of the superior court approving the disputed language in the class notice and hold that the absent class members in this case may not be held liable for ACS's attorney's fees if ACS proves to be successful in this litigation.

---

**42.** *Id.*

**43.** 742 F.2d 541, 542 (9th Cir.1984).

**44.** *Id.* at 542–43.

**45.** *Id.* at 543 & 545.

**46.** *Id.* at 545.